**Exhibit A**

| RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT  No. ▮▮▮▮ | Seller  RAMEY MOTORS HONDA  120 HIGHWAY 589  PURVIS, MS 39475- | Buyer  CLIFTON HOLIFIELD  ▮▮▮▮ |
|---|---|---|
| Date 05/01/2024 | "We," "us," and "our" mean the Seller above, its successors and assigns. | "You" and "your" mean each Buyer above, and guarantor, jointly and individually. |

### TRUTH IN LENDING DISCLOSURE

| ANNUAL PERCENTAGE RATE  The cost of your credit as a yearly rate. | FINANCE CHARGE  The dollar amount the credit will cost you. | AMOUNT FINANCED  The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS  The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE  The total cost of your purchase on credit, including your down payment of $ 500.00 |
|---|---|---|---|---|
| 16.99 % | $ 3,775.20 | $ 7,692.00 | $ 11,467.20 | $ 11,967.20 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 191.12 | Monthly beginning 05/31/2024 |

**Security:** You are giving a security interest in  ☐ (description of other property)
☒ the Goods purchased.

**Late Charge:** If all or any portion of a payment is not paid within 15 days of its due date, you will be charged a late charge of the greater of 4% of the unpaid amount of the payment due or $5.

**Prepayment:** If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge.
☒ If you pay off this Contract early, you will not be entitled to a refund of part of the Additional Finance Charge.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

---

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

**Credit Life:** Insured N/A
☐ Single ☐ Joint  Prem. $ N/A   Term N/A
**Credit Disability:** Insured N/A
☐ Single ☐ Joint  Prem. $ N/A   Term N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The deductible amount of this insurance may not exceed $ N/A . If you get insurance from or through us you will pay $ N/A  for N/A  of coverage.

This premium is calculated as follows:
☐ Fire-Theft and Combined Additional Cov.  $ N/A
☐ N/A    $ N/A
☐ N/A    $ N/A

**Liability insurance coverage for bodily injury and property damage caused to others is NOT included in this Contract unless specifically indicated.**

☐ **SERVICE CONTRACT:** With your purchase of the Goods, you agree to purchase a Service Contract to cover _____ N/A _____ . This Service Contract will be in effect for N/A .

| N/A | N/A | N/A | N/A |
|---|---|---|---|
| Buyer | d/o/b | Buyer | d/o/b |

| N/A | N/A | N/A | N/A |
|---|---|---|---|
| Buyer | d/o/b | Buyer | d/o/b |

---

Retail Installment Contract and Security Agreement-MS
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

NOT FOR HOME IMPROVEMENT OR MANUFACTURED HOMES

N/A

RSSIGSLFAZMS 9/29/2015
Page 1 of 5

This is not the Authoritative Copy.  Customer Copy

**ITEMIZATION OF AMOUNT FINANCED**

| | | |
|---|---|---|
| Goods and/or Services Price | $ | 8,132.00 |
| (including sales tax of $ 532.00 ) | | |
| Service Contract, Paid to: N/A | $ | N/A |
| Amount to Finance line e. (if e. is negative) | $ | N/A |
| **Cash Price** | $ | 8,132.00 |
| Manufacturer's Rebate | $ | N/A |
| Cash Down Payment | $ | 500.00 |
| Deferred Down Payment | $ | N/A |
| a. Total Cash/Rebate Down | $ | 500.00 |
| b. Trade-In Allowance | $ | N/A |
| c. Less: Amount owing | $ | N/A |
| Paid to: N/A | | |
| d. Net Trade-In (b. minus c.) | $ | N/A |
| e. Net Cash/Trade-In (a. plus d.) | $ | 500.00 |
| **Down Payment** (e.; disclose as $0 if negative) | $ | 500.00 |
| **Unpaid Balance of Cash Price** | $ | 7,632.00 |
| Paid to Public Officials - Filing Fees | $ | N/A |
| Insurance premiums paid to insurance company(ies) | $ | N/A |
| Additional Finance Charge(s) Paid To Seller | $ | N/A |
| To: Title Fee | $ | 10.00 |
| To: Trauma Fee | $ | 50.00 |
| To: N/A | $ | N/A |
| To: N/A | $ | N/A |
| To: N/A | $ | N/A |
| To: N/A | $ | N/A |
| To: N/A | $ | N/A |
| To: N/A | $ | N/A |
| To: N/A | $ | N/A |
| To: N/A | $ | N/A |
| **Total Other Charges/Amounts Pd. to Others** | $ | 60.00 |
| **Less: Prepaid Finance Charges** | $ | N/A |
| **Amount Financed** | $ | 7,692.00 |

We may retain or receive a portion of any amounts paid to others.

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the goods (Goods) and services described below. The Goods are sold in their present condition, together with the usual accessories and attachments.

Description of Goods or Services Purchased

| Serial or Unit No. | Motor or Cabinet No. |
|---|---|
| 1HFTE4008RJ001643 | 2024 HONDA RANCHER 4X4 |

Price of Each Unit
7,600.00

Description of Other Collateral (Not household goods)
N/A

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Goods purchased and any other collateral described above, and all accessions, attachments, accessories, and equipment placed in or on the Goods or other collateral, together called Property, and proceeds of the Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 7,692.00 , plus finance charges accruing on the unpaid balance at the rate of 16.99 % per year from today's date until maturity. After maturity, or after you default and we demand payment, we will earn finance charges on the unpaid balance at 16.99 % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURE. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **ADDITIONAL FINANCE CHARGE:** You agree to pay an additional, nonrefundable finance charge of $ N/A that will be ☐ paid in cash. ☐ added to the Cash Price. ☐ paid proportionally with each payment.

☐ **MINIMUM FINANCE CHARGE:** You agree to pay a minimum finance charge of $ N/A if you pay this Contract in full before we have earned that much in finance charges.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED.

☐ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**GENERAL TERMS:** You have been given the opportunity to purchase the Goods and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Goods and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURE assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

The law of Mississippi will govern this transaction. It is also governed by applicable federal law and regulations. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be in Mississippi, unless otherwise required by law.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

**TELEPHONE MONITORING AND CALLING:** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the

This is not the Authoritative Copy.

Customer Copy

Retail Installment Contract and Security Agreement-MS
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

NOT FOR HOME IMPROVEMENT OR MANUFACTURED HOMES

RSSIGSLFAZMS 9/29/2015
N/A
Page 2 of 5

account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**NAME AND LOCATION:** Your name and address indicated on page 1 are your exact legal name and your principal residence. You will provide us with at least 30 days notice prior to changing your name or principal residence.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:
- A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Goods.
- B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
- C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.
- E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent. You will not permit the Property to become attached to any real estate without first providing us an opportunity to preserve our first priority status.
- F. You will pay all taxes and assessments on the Property as they become due.
- G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
- A. You fail to perform any obligation that you have undertaken in this Contract.
- B. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including, without limitation, court costs, attorneys' fees, and fees for repossession, repair, storage and sale of the Property securing this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract:
- A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
- C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.
- E. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

**RETURNED CHECK CHARGE:** If you make any payment required by this Contract with a check that is returned due to insufficient funds in the account, and we are charged a fee or service charge as a result of such a return, then we may add the actual amount of the fee or service charge up to a maximum of $15.00 to the principal of the unpaid balance of the loan or extension of credit.

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as a loss payee, we may obtain insurance to protect our interest in the Property. This insurance may include coverages not required of you. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

> **CREDITOR-PLACED INSURANCE NOTICE** - You are giving us a security interest in the Property described in the SECURITY section on page 2. You are required to maintain insurance on the Property to protect our interest until all debts secured by this Contract are paid. If you fail to provide evidence of insurance on the Property to us, we may place insurance on the Property and you will be responsible to pay for the costs of that creditor-placed insurance.

Retail Installment Contract and Security Agreement-MS
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

NOT FOR HOME IMPROVEMENT OR MANUFACTURED HOMES

N/A

RSSIGSLFAZMS 9/29/2015
Page 3 of 5

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:
  A. You must pay this Contract even if someone else has also signed it.
  B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
  C. We may release any security and you will still be obligated to pay this Contract.
  D. If we give up any of our rights, it will not affect your duty to pay this Contract.
  E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER:** To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.

**ARBITRATION PROVISION:**
**PLEASE READ CAREFULLY!** By agreeing to this Arbitration Provision you are giving up your right to go to court for claims and disputes arising from this Contract:
- EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, AND NOT BY A COURT OR BY JURY TRIAL.
- YOU GIVE UP ANY RIGHT THAT YOU MAY HAVE TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS ACTION OR CLASS ARBITRATION AGAINST US IF A DISPUTE IS ARBITRATED.
- IN ARBITRATION, DISCOVERY AND RIGHTS TO APPEAL ARE GENERALLY MORE LIMITED THAN IN A JUDICIAL PROCEEDING, AND OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY NOT BE AVAILABLE.

You or we (including any assignee) may elect to resolve any Claim by neutral, binding arbitration and not by a court action. "Claim" means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to: 1. the credit application; 2. the purchase of the Property; 3. the condition of the Property; 4. this Contract; 5. any insurance, maintenance, service or other contracts you purchased in connection with this Contract; or 6. any related transaction, occurrence or relationship. This includes any Claim based on common or constitutional law, contract, tort, statute, regulation or other ground. To the extent allowed by law, the validity, scope and interpretation of this Arbitration Provision are to be decided by neutral, binding arbitration.

If either party elects to resolve a Claim through arbitration, you and we agree that no trial by jury or other judicial proceeding will take place. Instead, the Claim will be arbitrated on an individual basis and not on a class or representative basis.

The party electing arbitration may choose either of the following arbitration organizations and its applicable rules, provided it is willing and able to handle the arbitration: American Arbitration Association, 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org) or JAMS, 1920 Main Street, Suite 300 Irvine, CA 92614 (www.jamsadr.com), or it may choose any other reputable arbitration organization and its rules to conduct the arbitration, subject to the other party's approval. The parties can get a copy of the organization's rules by contacting it or visiting its website. If the chosen arbitration organization's rules conflict with this Arbitration Provision, the terms of this Arbitration Provision will govern the Claim. However, to address a conflict with the selected arbitration organization's rules, the parties may agree to change the terms of this Arbitration Provision by written amendment signed by the parties. If the parties are not able to find or agree upon an arbitration organization that is willing and able to handle the arbitration, then the arbitrator will be selected pursuant to 9 U.S. Code Sections 5 and 6.

The arbitration hearing will be conducted in the federal district where you reside unless you and we otherwise agree. Or, if you and we agree, the arbitration hearing can be by telephone or other electronic communication. The arbitration filing fee, arbitrator's compensation and other arbitration costs will be paid in the amounts and by the parties according to the rules of the chosen arbitration organization. Some arbitration organizations' rules require us to pay most or all of these amounts. If the rules of the arbitration organization do not specify how fees must be allocated, we will pay the filing fee, arbitrator's compensation, and other arbitration costs up to $5,000, unless the law requires us to pay more. Each party is responsible for the fees of its own attorneys, witnesses, and any related costs, if any, that it incurs to prepare and present its Claim or response. In limited circumstances, the arbitrator may have the authority to award payment of certain arbitration costs or fees to a party, but only if the law and arbitration organization rules allow it.

An arbitrator must be a lawyer with at least ten (10) years of experience and familiar with consumer credit law or a retired state or federal court judge. The arbitration will be by a single arbitrator. In making an award, an arbitrator shall follow governing substantive law and any applicable statute of limitations. The arbitrator will decide any dispute regarding the arbitrability of a Claim. An arbitrator has the authority to order specific performance, compensatory damages, punitive damages, and any other relief allowed by applicable law. An arbitrator's authority to make awards is limited to awards to you or us alone. Claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Any arbitration award shall be in writing, shall include a written reasoned opinion, and will be final and binding subject only to any right to appeal under the Federal Arbitration Act ("FAA"), 9 U.S. Code Sections 1, et seq. Any court having jurisdiction can enforce a final arbitration award. You and we agree that this Arbitration Provision is governed by the FAA to the exclusion of any different or inconsistent state or local law.

You or we can do the following without giving up the right to require arbitration: seek remedies in small claims court for Claims within the small claims court's jurisdiction, or seek judicial provisional remedies. If a party does not exercise the right to elect arbitration in connection with any particular Claim, that party still can require arbitration in connection with any other Claim.

This Arbitration Provision survives any (i) termination, payoff, assignment or transfer of this Contract, (ii) any legal proceeding by you or us to collect a debt owed by the other, and (iii) any bankruptcy proceeding in which you or we are the debtor. With but one exception, if any part of this Arbitration Provision is deemed or found to be unenforceable for any reason, the remainder of this Arbitration Provision will remain in full force and effect. The one exception is that if a finding of partial unenforceability would allow arbitration to proceed on a class-wide basis, then this Arbitration Provision will be unenforceable in its entirety.

**CAUTION:** It is important that you read this Arbitration Provision thoroughly before you sign this Contract. By signing this Contract, you acknowledge that you read, understand and agree to this Arbitration Provision. If you do not understand this Arbitration Provision, do not sign this Contract; instead ask your lawyer. If you approve this Arbitration Provision, you have an additional 30 days after signing to reconsider and reject your approval, as described in the ARBITRATION PROVISION AND PROCESS TO REMOVE section. If you use that process to reject, this Arbitration Provision will not be a part of this Contract, but the rest of this Contract will still be binding and effective.

**THIRD PARTY AGREEMENT**

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | N/A |
|---|---|
| Signature of Third Party Owner (NOT the Buyer) | Date |

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**ARBITRATION PROVISION AND PROCESS TO REMOVE:**
**This Contract contains an Arbitration Provision that affects your rights.** You agree that either of us may request and require the other to resolve disputes or claims through arbitration instead of a lawsuit. Detailed terms are in the Arbitration Provision.

**Process to Remove.** You can reconsider and reject your approval of the Arbitration Provision by sending a written notice to the Assignee (identified in the Assignment section) or if there is no Assignee, then to Seller. The notice must be postmarked within 30 days of the date you signed this Contract. It simply needs to state your decision to reject the Arbitration Provision in this Contract and include your signature. It must also provide your name, Seller's name and the date of this Contract.

**Rejecting the Arbitration Provision will NOT affect our decision to sell the Property to you, the terms of financing, or any other terms of this Contract, except that the Arbitration Provision will not apply.**

**By initialing this section, you confirm that you read, understand and agree to the Arbitration Provision in this Contract, including the process to remove it.**

Buyer initials: _[initials]_   N/A   N/A   N/A

☒  **ELECTRONIC SIGNATURE ACKNOWLEDGMENT:** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.**

**Notice to the Buyer: 1. Do not sign this contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the contract you sign.**

**BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 THROUGH 5 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**

Buyer:

| _[signature]_ | 05/01/2024 |
|---|---|
| Signature | Date |

| N/A | N/A |
|---|---|
| Signature | Date |

| N/A | N/A |
|---|---|
| Signature | Date |

| N/A | N/A |
|---|---|
| Signature | Date |

Seller: By _[signature]_

**ASSIGNMENT:** This Contract and Security Agreement is assigned to **American Honda Finance Corporation** (address) P.O. Box 997503 Sacramento, CA 95899-7503 , the Assignee, phone (800) 532-8127 . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

This is not the Authoritative Copy.

Retail Installment Contract and Security Agreement-MS
©2017 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

NOT FOR HOME IMPROVEMENT OR MANUFACTURED HOMES

_[initials]_ N/A
RSSIGSLFAZMS 9/29/2015
Page 5 of 5

# CERTIFICATE OF TITLE

Form # 79-001

## STATE OF MISSISSIPPI

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| 1HFTE4008RJ001643 | HOND | 2024 | TRX420 | AT | MS1818647808 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 06/11/2024 | 05/01/2024 | 1 | NEW | AT | EXEMPT |

**OWNER(S)**
HOLIFIELD, CLIFTON

**BENEFICIARY**

**BRANDS**

☐ Fully Autonomous Vehicle

**1ST LIENHOLDER**
AMERICAN HONDA FINANCE CORPORATION
PO BOX 997503
SACRAMENTO CA 95899-7503

DATE: 05/01/2024

**2ND LIENHOLDER**

DATE:

**MAIL TO**

AMERICAN HONDA FINANCE CORPORATION
PO BOX 997503
SACRAMENTO CA 95899-7503

M16-2



LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____ BY _____
           (LIENHOLDER)                    (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20____

2ND LIEN _____ BY _____
           (LIENHOLDER)                    (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS
THE 11TH DAY OF JUNE 20 24

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1. Mississippi Code of 1972. and subject to the provisions thereof.

CONTROL NUMBER
O 05565055

MISSISSIPPI DEPARTMENT OF REVENUE

**VOID IF ALTERED**

Exhibit A

***NOTICE: ANY ALTERATION OR ERASURE VOIDS THE ASSIGNMENT AND ALL ASSIGNMENTS THAT FOLLOW***

Federal and State Law requires that you state the mileage in connection with the transfer of ownership. Failure to complete, or providing a false statement, may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE BY REGISTERED OWNER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name _____  Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

**CAUTION:** READ CAREFULLY BEFORE YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
    WARNING - ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) _____

**SELLER:**
Signature(s) _____  Printed Name(s) _____  Date of Sale _____

"I am aware of the above odometer certification made by seller"
**BUYER:**
Signature(s) _____  Printed Name(s) _____

## FIRST RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name _____  Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

**CAUTION:** READ CAREFULLY BEFORE YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
    WARNING - ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) _____

**DEALER OR AGENT:**
Signature(s) _____  Printed Firm Name _____  Date of Sale _____

"I am aware of the above odometer certification made by seller"
**BUYER:**
Signature(s) _____  Printed Name(s) _____

## SECOND RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name _____  Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

**CAUTION:** READ CAREFULLY BEFORE YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
    WARNING - ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) _____

**DEALER OR AGENT:**
Signature(s) _____  Printed Firm Name _____  Date of Sale _____

"I am aware of the above odometer certification made by seller"
**BUYER:**
Signature(s) _____  Printed Name(s) _____

## THIRD RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name _____  Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

**CAUTION:** READ CAREFULLY BEFORE YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
    WARNING - ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) _____

**DEALER OR AGENT:**
Signature(s) _____  Printed Firm Name _____  Date of Sale _____

"I am aware of the above odometer certification made by seller"
**BUYER:**
Signature(s) _____  Printed Name(s) _____

## LIENHOLDER TO BE SHOWN ON NEW TITLE

Lien in favor of _____

whose address is _____

*Side margin:* SCRAPPED, DISMANTLED, OR DESTROYED VEHICLE - This is to be filled in by Vehicle Owner, Certificate of Title must be mailed or delivered to the Mississippi Department of Revenue. I/we hereby warrant that the Vehicle described on the reverse side of this Certificate was scrapped, dismantled, or destroyed on _____, 20_____. Owner's Signature _____